UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael S. Kimm, Esq. (MK4476)
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, NJ 07632
Tel 917-477-8500
*Attorneys for Plaintiff*

| | |
|---|---|
| ROBERT BRENNAN dba NATIONAL WIND FARM | 2022-cv- |
| Plaintiff, | |
| - against - | |
| GLENN ODOM, RENEGADE RENEWABLES, LLC, MODO CAPITAL, INC.,  BLUE PLANET FUNDING, LLC, KEVIN ADLER, and ABC COMPANIES 1 THROUGH 10, | **Complaint with Jury Demand** |
| Defendants. | |

Plaintiff alleges the following upon knowledge, except where alleged upon information and belief, against the above-named defendants:

**THE PARTIES**

1. At all relevant times, plaintiff Robert Brennan (Brennan) was and is an individual residing at 32 Constitution Blvd˜ Whiting, N.J., 08759.  Plaintiff has been engaged in the renewable energy field as a developer and project manager of various renewable energy projects including wind and solar projects.  Brennan is associated with the DBA "National Wind & Farm."

2. At all relevant times, defendant Glenn Odom (Odom) was and is an individual

1

residing at 1030 FM 2392, Dimmitt, Texas 79027. Odom is a first-time developer of a solar energy project generally known as Renegade Renewables project ("Renegade Solar Project") or Dawn Solar project, which was successfully developed at an aggregation of land totaling approximately 4000 acres near Hereford, Texas, under the leadership and advice of Brennan.

3. At all relevant times, defendant Renegade Renewables, LLC (Renegade), was and is an entity organized by its principal, Odom, under Texas law, which is believed to share Odom's residential address, and which ultimately served as the instrumentality that developed the Renegade Solar Project.

4. At all relevant times, defendant Modo Capital, LLC (Modo), was and is an entity organized by its principal, Odom, under Texas law, which is believed to share Odom's residential address, and which ultimately served as an instrumentality that held some of the land-rights to the Renegade Solar Project.

5. At all relevant times, defendant Blue Planet Funding, LLC (Blue Planet), was an entity organized under Delaware law with its principal place of business at 50 Riverside Drive, Apt 19A, New York, New York 10069. Blue Planet is an investment firm that funded certain aspects of the development of the Renegade Solar project and eventually became a joint developer/venturer along with defendant Odom and his two entities, Renegade and Modo, in the Renegade Solar project.

6. Defendants ABC Companies 1 through 10 are entities whose true identities are not currently known to plaintiff and who may hold some or all of the Renegade Solar project

rights, and/or revenue rights, following strategic transfers and/or assignments of defendants' contractual rights, which affect plaintiff's claims in this action.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action under 28 U.S.C. 1332(a) in that plaintiff is a domiciliary of New Jersey and defendants are domiciliaries of states other than New Jersey, and the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest.

8. Venue is proper in this District in that essential instruments regarding the Renegade Solar projects were made under New York law, subject to enforcement and jurisdiction in New York; all defendants have engaged in extensive transaction of business within New York State and within the County of New York; and defendants have otherwise consented to the jurisdiction and venue of legal matters in this District.

## FACTS COMMON TO ALL CLAIMS

9.  The solar energy industry field generally involves four stages, which may be developed, financed and/or traded by different types of players among developers, investors, and operators of solar energy plants:

Stage 1:  site control, including owner of land with mineral and mining rights;

Stage 2: due diligence, including availability of power transfer stations and feasibility of "inter-connection";

Stage 3: securing of contractual rights including, importantly, the right

to "inter-connection" with a state-wide or regional power company who would purchase from the solar farm and sell to the market place of power; and,

Stage 4: the construction and operation of a physical solar farm.

10. Plaintiff has been professionally engaged as developer or project manager, in the energy field for 50 years, since returning from the Vietnam War serving in the Marines Corp., of which 20 years of most current experience has been built in the renewable energy field.

11. In March 2015, plaintiff became acquainted with defendant Odom, a Dmmitt, Texas, cattle rancher, concerning his desire to develop a solar project near his base. Defendant Odom began to acquire lease-options to several tracts of land near Hereford, Texas, under a business entity name of Modo Capital, for potential development of a solar field, under the name, Renegade Renewables.

12. In an email communication dated March 5, 2015, defendant Odom stated that he was in the process of developing solar and wind farms:

The three wind farms we are talking about, do not have a corporate shell. They are each LLCs with most of the principles being the same in each project, with different percent ownership.

The 800 MW in western Deaf Smith County in called Bootleg Energy.

The 800 MW in north eastern NM is Gallegos Wind Farm

The 150 MW next to Changing Winds is Hart Wind

13.  Initially, defendant Odom requested plaintiff's role as a broker, to introduce key

4

persons and companies in the renewable energy field, who might contribute to defendant Odom's objective, and plaintiff agreed to such a role for 5% of the total project value of any resulting project developed through plaintiff's role.   Defendant Odom explained that the other principals involved in his business were his son and his grandson.

14. During the process of plaintiff serving as a broker, as plaintiff requested more and more information which was not available from defendant Odom and which was beyond Odom's knowledge and ability to prepare and provide, Odom quickly concluded that his experience as a now-retired, life-long cattle rancher, already in his 80's, rendered it difficult to "switch jobs" to the solar field, due to the complexities inherent in the renewable energy field that made it a high-barrier-to-entry industry. Indeed, beyond holding lease-options, and a desire to develop solar and wind farms, defendant Odom had little else.

15. Between 2015 and 2016, plaintiff reviewed and analyzed the potentiality for development of a solar farm in the Hereford area and guided defendant Odom to understand that the process of developing a solar energy project was intricate, complex, time-consuming and ultimately heavily dependent upon human-networks and knowledge-base. By 2016, plaintiff provided defendant Odom with a "bird's eye view" of the developmental process for a solar farm.

16. In June 2016, plaintiff initially estimated that a solar farm capable of producing 250 MegaWatt would be feasible, with a potential financial gain to Renegade and Modo in the sum of approximately $24 million by Stage 3.

17. Realizing the complexities involved, defendant Odom induced plaintiff to become a minority partner in his Renegade Renewables development project.  Plaintiff agreed. Eventually, defendant Odom prepare and brought forth a written agreement dated May 24, 2017, which memorialized their prior verbal agreement and confirmed plaintiff's 11 percent interest in the solar project being developed under the auspices of Renegade Renewables and Modo Capital.  Defendant Odom represented that plaintiff's 11 percent in Renegade and Modo came from his own majority interest and that both his son and his grandson were aware of his transfer of interests.

18. Defendant Odom had secured, during 2015-16, through his entity, Modo Capital, a contiguous cluster of land parcels comprising approximately 3800 acres of land just north of Hereford, Texas.   However, because Modo held only a lease-option to those parcels, site control remained incomplete under Odom's efforts, and was not secured until after plaintiff became engaged.

19. While site control was pending, plaintiff prepared financial models for a 250 MW project and, by late 2016, upgraded the size of the potential project to 500 MW AC (equivalent to 685 MW DC), and began to seek out potential investors to invest and fund Stage 2 and Stage 3.

20. In December 2016, plaintiff reached out Altair Development Associates, located in New Jersey, through a mutual acquaintance and opened a line of communication with Bradd Forestein, a managing member of Altair.  Altair was in the business of developing

6

solar projects by matching projects with project investors. This role involves extensive knowledge of solar project's four stages and how to implement each stage so as to guide parties involved in Altair's projects to succeed.

21. After extensive review of materials and discussions between plaintiff and Forstein, plaintiff and Altair agreed to work together in the Renegade Solar project. During the course of plaintiff's dealings with Altair and with others, based upon the 11 percent ownership interest plaintiff acquired from defendant Glenn Odom, and with his authorization, plaintiff held himself out as a "partner of Glenn Odom and his companies," and important matters were addressed to him.

22. After plaintiff and Altair cooperated with the early stage developmental matters through approximately June 2017, in conjunction with Altair, plaintiff had refined the Renegade Solar project costs and projections and rendered an Excel spreadsheet showing the most current financial model based upon a 500 MW AC solar farm capacity, to be built at the Renegade Solar project near Hereford, Texas. On or about June 11, 2017, plaintiff prepared a financial model which was discussed, reviewed, and shared with defendant Odom and with Altair.

23. At all relevant times, Altair was a finder and developer of solar projects and was in the business of finding solar project investors who was invest or "buy in" to a project being developed, either in its early stages or in the late stages, depending on each investor's business strategy. Generally early investors tend to invest smaller amounts of money for

relatively higher risk and higher upside, while late-stage investors tend to invest larger sums while assuming less risk.

24. In December 2017, Altair advised that it had presented the Renegade Solar project to a small, relatively unknown, new solar-investment startup called Blue Planet Funding, headed by Kevin Adler, as a Stage 1 investor, who would invest the funds required to develop the Renegade Solar project to the inter-connection stage, then potentially sell or assign the paper rights to a Stage 4 developer to then install the solar panels and operate the solar energy farm.

25. After extensive back and forth, plaintiff, along with defendant Odom, were introduced to Blue Planet's CEO Kevin Adler; and eventually Blue Planet agreed to invest in, and become a joint venturer of, Renegade and Modo.  On or about December 29, 2017, a "kick off meeting" was held with numerous attendees from Altair, Blue Planet as well as Odom and plaintiff, to discuss how the project would move forward.  Plaintiff identified himself as a partner of Glenn Odom and that fact was already known by Altair and anyone who had dealings with Altair.  After extensive supervision and guidance from Altair, Blue Planet and Odom eventually negotiated a Letter of Intent that provided for (1) estimated, early-stage costs to be borne by Blue Planet and (2) the due diligence protocol between the parties.

26.  During the December 2017 negotiations, plaintiff and Odom required Blue Planet to immediately infuse approximately $800,000 to $900,000 to cover Stage 2 costs for due

diligence and to secure project feasibility studies in engineering, environmental, and legal aspects, along with an allocation of small monthly payments to plaintiff and Odom.

27.  At all relevant times, defendant Blue Planet, by its CEO Kevin Adler, assured plaintiff and Odom that "we have the funds" and they were ecstatic about entering an early stage project with a huge upside in a 500 MegaWatt AC project, which was also known as 685 MW DC, sufficient to power a second-tier city for a year.  Yet defendant Blue Planet failed to tender any funds through December 2017; and after the December 29, 2017, Letter of Intent was executed by Odom and Adler, defendant Blue Planet/Adler failed to tender any of the funds, and insisted that the money "had to be raised" in the future" because Blue Planet, being a recent start-up, had no liquidity of such sums of money.   Thus, to say that defendants Blue Planet and Adler induced the Letter of Intent upon empty promises is to make an understatement.

28. Due to Adler/Blue Planet's bad faith negotiating tactics, inducing a joint venture on the promise of providing "early funding," then stating or revealing that it did not have such funds to invest, during the "kick off call" of December 29, 2017, and for the next several weeks, plaintiff was vocally displeased and plaintiff expressed his displeasure to Adler.

29.  In approximately mid-February 2018, plaintiff came to learn from defendant Odom that, defendant Odom had been told by defendant Adler during a three-way call among Adler, Odom, and Altair's Managing Member, Kenneth Blechman, that unless Odom

9

removed plaintiff from the Renegade Solar project, Odom would never see a dollar from the project.  Plaintiff understood from his discussions with defendant Odom that Odom had been threatened by Adler.  As of this point, defendant Odom, who remained a majority partner of plaintiff and who owed plaintiff fiduciary duty, among other legal objections, stated that he would "take the lead role" and within several weeks, stopped communicating with plaintiff altogether.

30. During the ensuing weeks and months, plaintiff received "drip and drab" updates as to developments in the Renegade Solar project.  In April 2018, plaintiff learned that defendant Blue Planet had dispatched its engineer, William Heck, a law school graduate with experience in the solar energy field, and effectively functioning as Blue Planet's engineering due diligence officer, that the Renegade project site, near Hereford, Texas, was so close to an electric power transfer station that one could hear the "humming" of the electrical current while standing on portions of the tracts secured by Odom in the lease-options.  Plaintiff also learned that this fact, alone, was enough for Blue Planet's insiders including Adler to rejoyce in celebration that they had landed a potential gold mine.

31. Based upon plaintiff's most current financial model, rendered June 2017, even when measured conservatively, the numbers involved in the project were phenomenal.  By expending the estimated costs of $900,000 through Stage 3, the so-called NTP stage or "notice to proceed,"  just before solar panels are to be built on the field, when the regional power company would have approved the "inter-connection request," and Renegade would

have paid the inter-connection fees, the project developers, in the aggregate, would be looking at an 8- to 9-figure pay day, plus residual payout over a 20 year term, once the solar field is built and running, from the power sale-revenue sharing with the solar farm operator, usually a publicly traded entity or similar, well financed enterprise engaged in the energy field.

32. While there was ample opportunity for everyone involved in the Renegade Solar project to be rewarded, Adler and his company were particularly greedy and entered into agreements with no intentions of performing the terms of the agreements.  Defendants Blue Planet and Adler began to breach their verbal agreement with Odom (and therefore plaintiff included) immediately after making the representations.  Even the Letter of Intent, fully executed by December 29, 2017, promptly became meaningless as Blue Planet's representations that it had the money to proceed with due diligence became hollow and, once Blue Planet grabbed the Letter of Intent, it took advantage of a 60 day exclusivity period to then seek a third-party investor to invest the money it was supposed to invest.

33. Not only did Blue Planet disavow promises made, it used threats of "losing everything" to coerce changes of terms and conditions of "agreement" that had already been made.  Yet another example is Blue Planet's relationship with Modo Capital, which was to result in Blue Planet's payment at the specified "contractual formula" when the Renegade Solar project reached "NTP or "Notice To Proceed" stage, upon the confirmation of the inter-connection link being approved by the regional power company, ERCOT of Texas.  Under

the Term Sheet attached to the Letter of Intent, paragraph 2 provided:

**2. Purchase Price**

For Phase 1 Renegade Solar, LLC and Phase 2 Renegade Solar the price will be three cents ($.030)) per watt AC without a PPA, and four ($.04) cents per watt AC with a PPA of [$31] per megawatt hour or greater for a term of eighteen (18) years or greater.

34.   Despite the fact that the sum of three cents and four cents per watt had been extensively negotiated and agreed upon, depending whether a Power Purchase Agreement was also in place as of the time the project was declared to attained NTP/Notice To Proceed stage, some time between April 2018 and the following year, defendants Adler and Blue Planet, upon information and belief, used threats of "losing everything" to coerce plaintiff's partner Odom to (1) not only agree to a reduction of compensation to a penny per watt, but (2) also coerced and tricked Odom to surrender the ownership interest to Modo Capital, the entity that held the land rights, to "Kevin Adler" in perpetuity.  Plaintiff does not know whether any monetary consideration was paid by defendant Adler to defendant Odom but these tactics including threats and trickery by both of them have sought to impair or otherwise dilute plaintiff's 11 percent ownership interest that pre-dates any transfer or transaction they allegedly consummated after May 24, 2017.

35.   Defendants Adler and Blue Planet subsequently structured Blue Planet, the signatory to the Letter of Intent, to pass along its contractual rights to other entities owned or controlled by defendant Adler to induce third-party investments while also avoiding the involvement of Odom and his entities as co-venturers, and instead treated them as mere

contractual commission earners.  Likewise, upon information and belief, defendants Adler and Blue Planet also induced Altair and its officers Blechman and Forstein to enter into a written agreement only to claim that the agreement between them was of no contractual effect.

36. During the course of several years, while defendants Adler and Blue Planet kept plaintiff "away" from the project and project financial model created by plaintiff, and kept the original developer Odom effectively in the dark, and entered into an agreement with Altair only to assert that its own agreement with Altair was "invalid," defendants Adler and Blue Planet have been using and manipulating other people's money to tell third-party investors, including banks, that they "own" the Renegade Solar project, and have been making negotiations, deals, and contracts, without involving Odom or plaintiff, despite the fact that we have been co-venturers from the outset.

37. While defendants Adler and Blue Planet may believe that plaintiff has been forced out of the "partnership" in the entities, Renegade Solar and Modo Capital, in fact, plaintiff has never surrendered his 11 percent ownership interest; has never executed any instruments to surrender, transfer, or assign such interests; and has always retained his rights.  To the extent defendant Odom knowingly and deliberately circumvented plaintiff's 11 percent ownership and purportedly "sold, assigned or transferred 100 percent of Modo Capital," because Adler and Blue Planet, indeed, all parties involved in the Renegade Solar project, were told by plaintiff and by Altair that plaintiff was a "partner" of Odom, their own failure

to engage in due diligence is inexcusable and perplexing.

38. Using the land rights originated by defendant Odom and project valuation, projections and cost estimates modeled by plaintiff, and by Altair, defendants Adler and his partners at Blue Planet and, upon information and belief, other, subterfuge, "successor entities," owner or operated by defendant Adler, the entire Renegade Solar project's value, other than a single penny per watt, is allegedly now "owned" by Adler and his cohorts.  Such assertion, to be sure, would be abject false since plaintiff owns 11 percent of both Renegade and Modo and has yet to be paid a nickel, because Adler/Blue Planet entered the Renegade project with grand promises and an empty pocket.

39. This lawsuit has become necessary and proper because all defendants have isolated plaintiff and have failed and refused to deal with plaintiff and have deliberately and strategically kept plaintiff in the dark, totally deprived of information, updates, and financial fruits.

40. Based upon the financial modeling rendered by plaintiff during 2016-2017, and further refined with Altair's support in 2018, plaintiff believes that the financial value of the Renegade Solar project at "NTP/Notice To Proceed" and possibly beyond, for another 18-20 years, inclusive of the aggregate, long-term revenue-sharing value, exceed $200 million.

## PLAINTIFF'S CLAIMS FOR RELIEF

### Count One – Declaratory Judgment – 28 U.S.C. 2201

41. The preceding allegations are incorporated here, by reference.

42.  There is a dispute between plaintiff and Odom whether plaintiff is an 11 percent partner in Renegade Renewables LLC and Modo Capital LLC as expressly stated by a written agreement dated May 24, 2017, prepared and executed by Odom himself.

43.  Unlike plaintiff who had no access to lawyers at the time, defendant Odom not only had immediate access to a lawyer, namely his grandson, he held his grandson and his son as minority partners who were told about and consented to Odom's assignment of 11 percent of his own ownership/membership interest to plaintiff.

44.  Because the apparent dispute between the parties involves the respective ownership interests, plaintiff requests that the Court declare that all rights plaintiff received under the May 24, 2017 agreement, namely 11 percent ownership, remains intact.

### Count Two – Declaratory Judgment – 28 U.S.C. 2201

45. The preceding allegations are incorporated here, by reference.

46.  There is a dispute between plaintiff and defendants Adler, Blue Planet and any other person or entity to whom they may have transferred or assigned any rights in Renegade Renewables LLC and/or Modo Capital LLC as to the continued ownership interests of plaintiff, as originally acquired from defendant Odom.

47. Because the apparent dispute between the parties involves the respective ownership interests, plaintiff requests that the Court declare that all rights plaintiff received under the May 24, 2017 agreement with defendant Odom, namely 11 percent ownership, remains with plaintiff and was not transferred by any alleged "transfer" between or among

the defendants.

### Count Three – Declaratory Judgment – 28 U.S.C. 2201

48. The preceding allegations are incorporated here, by reference.

49. To the extent any transfer or assignment of rights purportedly involved Renegade Renewables or Modo Capital or both, since such maneuvers would have intended to impair plaintiff's ownership interest, plaintiff requests that the Court declare that such transfers were void, or voidable, for failure to tender reasonable value for plaintiff's interests.

### Count Four – Accounting –  Under NY Law

50. The preceding allegations are incorporated here, by reference.

51. As an owner of Renegade Renewables LLC and Modo Capital LLC and, therefore, as a co-venturer with defendant Blue Planet and any and all successors to defendant Blue Planet, plaintiff seeks access and leave to review the full set of transfers, business activity, and related information pertaining to the Renegade Solar project promptly upon joinder of pleadings or commencement of discovery.

### Count Six – Breach of Agreement – Under NY Law

52. The preceding allegations are incorporated here, by reference.

53. Plaintiff and defendant Odom entered into a written agreement dated May 24, 2017, whereby plaintiff became an 11 percent owner of the Renegade Solar project being developed under the auspices of Renegade Renewables LLC and Modo Capital LLC.

54. Upon information and belief, plaintiff believes that the Renegade Solar project has

been or is nearing a potential infusion of money by a Stage 4 investor, as the project has now been approved of the "inter-connection" by ERCOT power company based in Texas, and is at or near the point of construction of the solar field.

55. After making the May 24, 2017, agreement, plaintiff provided substantial performance and plaintiff believes that all persons involved in the Renegade Solar project will readily admit that plaintiff brought upon a key role and built structure and viability to a project that appeared to be cow grazing desert land, when defendant Odom had conceived it.

56. While plaintiff has performed, defendants have failed to perform and indeed have been seeking to evade their duties and responsibilities to plaintiff.  By reason of those facts, plaintiff has been damaged.  Plaintiff is entitled to compensatory damages; and plaintiff is entitled to punitive damages or exemplary damages under state law for defendants' fraudulent, subterfuge, slight-of-hand acts against plaintiff.  While defendant Odom himself was something of a victim to Adler/Blue Planet's coercive, treat tactics, by remaining silent and ratifying such bad faith conduct defendant Odom has become those defendants' coconspirators.

**Count Seven – Breach of Fiduciary Duty – Under NY Law**

57. The preceding allegations are incorporated here, by reference.

58. As the majority partner and CEO of the entities, Renegade Renewables and Modo Capital, defendant Odom is a fiduciary and owed a fiduciary duty to plaintiff.   Defendant

Odom not only sidelined plaintiff and purported to "negotiate" or "renegotiate" revenue-sharing amounts and percentages that were detrimental to the partnership, but he did so in total disregard of plaintiff's ownership and partnership interests in the entities and to the Renegade Solar project's aggregate value.

59. Defendant Odom's breach of fiduciary duty resulted in plaintiff's injury in the form of financial detriment and the dilution of his partnership interests. Because plaintiff has been injured, plaintiff is entitled to compensation.

60. Defendant Odom committed his acts and omissions surrounding his breach of fiduciary duty willfully, knowingly, and maliciously. Exemplary damages are thus appropriate and should be awarded.

### Count Eight – Tortious Interference – Under NY Law

61. The preceding allegations are incorporated here, by reference.

62. Defendants Adler, Blue Planet and any other person or entity that may be involved in their fraudulent and tortious scheme are liable to plaintiff.

63. As stated above, beginning approximately January 2018 through several months, defendant Adler coerced, ordered, directed, or otherwise made it a condition of his/company's own required performance, under the parties' joint venture, that Odom must preclude plaintiff and/or force plaintiff out of the Renegade Solar project.

64. At all such times, defendants Adler and Blue Planet knew that plaintiff was defendant Odom's partner, project manager and/or broker and was essential to the viability

of the Renegade Solar project's Stage 1 presentation leading to the engagement of Altair and eventually defendants Adler and Blue Planet themselves.

65. Knowing that there was such a contract between plaintiff and Odom and/or his entities, in reckless disregard, defendants Adler and Blue Planet deliberately, intentionally and maliciously intended to destroy or impair plaintiff's contractual rights, and upon information and belief, they assumed, from approximately mid-2018, that their coercive actions in fact resulted in plaintiff's exclusion from the Renegade Solar project.  Such interference was tortious and in abject bad faith, so that defendants Adler/Blue Planet could control, manipulate, coerce Odom to follow their bad faith plans for the Renegade Solar project, and deprive plaintiff of any benefit of his contractual interests.

66. Due to these defendants' acts and omissions, plaintiff has been denied any of the rights and benefits arising out of his agreement with defendant Odom.

67. Defendants' committed their acts and omissions surrounding his breach of fiduciary duty willfully, knowingly, and maliciously.  Exemplary damages are thus appropriate and should be awarded.

### OTHER CLAIMS

68. Plaintiff reserves the right to pursue other claims.

69. Since approximately 2016 until defendants began to isolate plaintiff out of the Renegade Solar project affairs, plaintiff was instrumental in the creation and expansion of a Dropbox "Data Room" in which all Renegade Solar project-related documents and

information have been stored, shared with interested third-parties, and updated from time to time.  The Dropbox Data Room does not hold all of the materials, but does hold many critical documents.   Due to the defendants having precluded plaintiff from accessing a full range of business records pertaining to the underlying business matters, plaintiff has been precluded from accessing the Data Room and from stating other viable claims.  Once plaintiff receives access to such business records, plaintiff reserves the right to seek amendment of appropriate claims.

## RELIEF REQUESTED

WHEREFORE, plaintiff demands judgment against the defendants for:

A. Compensatory damages;

B. Exemplary damages;

C. Declaratory judgment;

D. Fees and costs; and

E. Any other relief the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

In accordance with Rule 38 of the Federal Rules of Civil Procedure, plaintiff requests trial by jury.

Dated: July 5, 2022                                /s/ Michael Kimm
                                                   Michael S. Kimm
                                                   Attorney for Plaintiff